Good morning, everyone, and welcome to the Ninth Circuit. Judge Clifton and I are happy to welcome Judge Rakoff, a district judge from the Southern District of New York. Welcome. Very great pleasure to be here. We'll take the cases in the order on the day sheet. The first case, United States v. Randall Fox, is submitted on the briefs. And the first case for argument is Barry Stimpson v. Midland Credit Mgmt., Inc. Good morning. May it please the Court, Scott Morrison, I represent Mr. Stimpson. We're here on an appeal from a summary judgment granted against him. I'd like to reserve two minutes for rebuttal.  Thank you, Your Honor. I think the easiest way to address this is, because it's all about the letter, is I'd like it's in the record at 38 and 39. What I'd sort of like to say, okay, what if I was hired to do a letter and I was hired by Midland and I was told, look, there's three things you need to know. One is this is time barred. We can't sue the people. Second is that it's going, you're going to send this letter to someone who's unsophisticated, the least sophisticated person in the community. And third, obviously, we want to collect on these debts. So I prepare this letter and I start off with the date of expiration because I have to put something in, because this is really sort of a sales pitch. I have to put something in to create a need to take action. So the first thing I put in the letter, up in the right-hand corner is an offer expiration date saying you've got a month to act. Then I give in highlighted little boxes who the creditor was, the original account, our account balance, who the owner is. And then I say I'm going to give you a discount of 40%. At this point in the letter, there's no mention that it's a time barred debt whatsoever. And then the next thing that I get attracted to is the middle of the letter. The middle of the letter basically saying call us today. We've given you, here's your universe. I've given you three payment options. These three payment options we want you to call in, and these are your choices, 40% off, 20% off, or monthly payments. So is it your position that the creditor is not allowed to make a sales pitch? Is that what you're saying? No. What I'm saying is, so here's the answer. So the first thing, the sales pitch can be made, but it has to be clear and straightforward. It has to be absolute. Well, where in the law does it say you're required to issue a letter that is the most clear and the most straightforward possible? That's not what we're looking at, is it? What are we looking at? What's misleading? What's misleading about this letter? Right. And respectfully, Your Honor, I thank the Court. I'm waiting to hear the answer to that question because I haven't heard anything about that yet. Okay. What's misleading about it? The misleading part is I think the format is important, how it's laid out, that the first information that's provided to the person is that you have three payment options when there's actually a fourth option. The second thing about it. Oh, the fourth option you mean is not payments. Right. So that's not really a payment option, is it? If I understand your argument, your argument is that it's misleading not so much in the words used, but in the arrangement, which would not lead a reasonably unsophisticated or the most unsophisticated debtor to realize that they don't have to pay a penny. Correct. And that's part of it because if you're reading the letter as a normal person would starting from the top to the bottom, the first thing is I have to, so if I'm trying to sell this, I have to create a universe where your options are limited to something that pays me. Doesn't that go to my question, which is do you read the FDCP, whatever? CPA. CPA. Those acronyms. As not, as Congress saying debt collectors cannot make a sales pitch because obviously if the letter starts with you are, you do not have to make any payment on this debt, then that avoids any sales pitch. Obviously nobody will pay. So I'm hearing your suggestion that a debt collector cannot make a sales pitch because if they do, it's misleading. It's misleading. Is that your position? Not entirely. It has to start out by saying you do not have to make any payment on this debt, and anything that's drafted as a sales pitch to try to get payment would be misleading. Is that your position? I just want to hear the answer, okay? Not entirely, Your Honor. Not entirely? How is it different? It's different in this sense because I think you do have to give that information to the person one way or another. They did. They did. They just did it further down on the letter, correct? Yeah, but they do it as a postscript, which goes back to it's a postscript after the signature line for the person. I don't think, this wasn't accidentally placed here. This wasn't, this was designed for certain purposes. And if you look at the letter, the design is to call your attention to you only have payment options as a postscript. Right, that's the sales pitch. Yes. So they make a, so I'm just trying to understand your position. No sales pitch is allowed because it would be misleading or deceptive. And if not, what sort of sales pitch is allowed? The sales pitch that would be allowed, for instance, Your Honor, you could say in the letter, dear Mr. So-and-so, this is a debt that we cannot sue you on. However, we are allowed to ask you to pay this debt, and we are asking you to pay this debt, and we're willing to give you a discount to pay it because you might want to pay it notwithstanding that we can't sue you or something to that effect. Okay. I do think that the FDCPA goes beyond to just clear false and misleading statements in the sense that it requires honesty. It's not just that you don't. So by the time you get to the bottom of this letter where the signature is, the only thing you know is you have three payment options. Then the next line does say, because the law limits how long you can be sued, and then it says, we will not sue you. And I do have a problem with that as well because it is not a discretionary. Because if I'm writing a letter, I'm like, well, I don't want to say I can't sue you because, you know, that's sort of, that's very, that's mandatory. I'd rather make it discretionary. And then I follow it up at the bottom where I put in a provision that says we're not obligated to renew any of the offers provided. Now, what offers are they referring to? If they're referring to the offers of payment options, shouldn't that have gone under the payment options? Or is it basically giving me the impression that maybe that also applies to my decision not to sue you? But your, the gist of your argument, if I'm understanding it, is not so much that the letter was deceptive or misleading, but that it was not sufficiently clear that the debtor didn't have to pay. Correct. And that is the argument. And I think the answer is because if it was clear, they clearly probably would not collect debt. But on the other hand, you know, it's not like they're being, you know, there's no question that they bought this debt time-barred. It was probably reflected in the price. It's not like they, you know. So Congress didn't... I'm sorry, forgive me. If they were carrying out the law and the spirit as well as the letter of the law, the letter would have said something like, we legally are forbidden to sue you on this debt, but there are good reasons why you might still want to pay it. Peace of mind, no more communications on this account, putting this debt behind you. Instead, your argument is, as I understand it, they make it appear that this is something you still have an obligation on. And it's only when you get down to the very fine print at the bottom, which at my age is difficult to read, even with corrected lenses, that you find out that they're not going to sue you. And even then, they don't quite say that they can't sue you. They make it discretionary. And again, if you tie it into the final line, which says these offers do not have to be renewed, the offers that are made are payment options and the offer that we will not sue you. This is... I understand it might be difficult to collect time-barred debt from people, but that doesn't mean that suddenly the balancing has to go, okay, well, we have to give them some leeway because, you know, this is a tough road to hoe. I mean, they voluntarily... This isn't the original creditor. This is a debt buyer who went in with their eyes wide open and bought time-barred debt and are trying to collect it. Do you want to save some time for yourself? Yes. I'm sorry. Thank you. May it please the Court. Josh Dickinson, and I represent Midland Credit Management. Your Honor, it's properly framed, the various claims that are being presented by the plaintiff in this case. They... It's an FDCPA case that presents alleged violations of provisions of the FDCPA that do not exist anywhere in the FDCPA. Isn't there an obligation to be forthright and honest? That's what opposing counsel suggests. Absolutely. And I think that that's the heart of the FDCPA. With respect, I believe that... that the least sophisticated debtor will understand it. Yes. And courts use... Absolutely. Yes. And courts use the term a little bit differently. Most courts, when looking at this issue, typically use the term unsophisticated consumer. To differentiate between, I believe the phraseology is we're not looking at the least sophisticated rung on the ladder. We assume a basic level of ability to read and understand plain language. And there's also extensive case law that says that we presume that when somebody is given a letter, that they're going to read the entire letter. Which gets back to Judge Akuta's point of, you know, are we allowed to make a sales pitch? Are we allowed to order things in a way that makes it most likely that the consumer will choose to pay the debt? Who are you selling? What... What are you selling if this is a sales pitch? I'm not sure I would use that exact phrase, but to the extent that that's the question... Right, exactly. It's not really a sales pitch issue, is it? No. I don't believe that it is. What I believe that it is, is that we are a debt collector. And we have the right, the United States Supreme Court has said repeatedly, most recently in Johnson, that simply because a debt is time barred does not mean that we do not have the right to collect it. But to your point, Your Honor, we have to collect that debt in a way that is free from being unfair, unconscionable, unreasonable. But that doesn't mean that we cannot try to be persuasive in our efforts to convince the consumer that they should pay debt that they owe. Again, Mr. Stimson admittedly owes this debt. Simply because it's time barred doesn't mean that collection efforts cannot proceed. So you could say that we cannot sue you. You may feel deep in your heart that you have an obligation here, a moral obligation. You have an opportunity to obtain peace of mind and all like that. But that's not the way it's worded. It's worded the reverse. It's all about pay off your debt and we'll give you a discount. And now, oh, by the way, way down in this tiny type, we can't sue you. Judge, with respect. And even then they don't say you can't sue. They say we won't sue you. Well, I'm happy to address that latter point. But with respect, Judge, I don't believe that the order in which we make these statements is germane. Why? So let's take a much more extreme. So supposing you sent a 20-page document and you didn't have what's in that little tiny type until the bottom of the 19th page, you wouldn't be here saying it doesn't matter about the order, would it? As with most good advocates, I try to run from the slippery slope whenever I can, Your Honor. I will just simply say the facts of this case is it's a one-page letter. Bold type, yes, there are different types, but all of it was very visible. Are we supposed to disregard that part? Are you saying we can't pay attention to the fact that some is in bold and some is featured and some is maybe a little more obscure than others? I would say within reason. And, again, to Judge Rakoff's point, if it was buried in the 30th page of a 40-page letter, then perhaps that could be germane. So we can look at form at some level. Why can't we look at form here? In fact, it is true that there's boldface type and there's something that draws attention to one part of the letter and there's parts of the letter that aren't really apparently intended to draw attention. And, Judge Clifton, what I would say is that, yes, you can certainly look at those issues, but they need to be looked at through the eyes of an unsophisticated consumer, which the Court must presume has a reasonable level to read and understand clear language, which I would submit this one-page letter, all the language was very clear. Everything was stated in there. Yes, is there an emphasis in a debt collection letter that we would like you to pay the debt that you owe? Yes. And I don't believe that the FDCPA was created by Congress to shift a pendulum that, frankly, pre-FDCPA was too far in favor of debt collectors and perhaps debt collectors were not engaging in appropriate activity. At that point, Congress stepped in and intended to even the playing field to make sure that debt collectors were behaving appropriately. But what I do not believe the FDCPA was ever intended was to switch the pendulum the other way such that debt collectors couldn't engage in reasonable efforts to try to convince, reasonably and fairly, that somebody who owes money should repay it, even if they can't ever be sued on the debt. Now, Judge Rakoff, I do want to address the question that you raised on the will not versus cannot argument. A bit of a grammarian argument. I mean, will not, cannot, they're synonyms, and I understand the position. You're a misfortune to say I was an English major. Yes, Your Honor. So I'm not going to go too far down the grammarian argument with you. First of all, this language, as we've argued extensively in the brief, was mandated by the CFPB regulatory agency whose job it is to protect consumers. What do you mean mandated? It was pursuant to a consent decree. The CFPB sued Midland and pursuant to a negotiated consent decree, ultimately an order was entered by a federal court that required us to use this very language. Beyond that, so the CFPB has told us this is the language that you must use, and that's part of our consent decree, so we've been following that consent decree. So if you use language like we cannot, that would have been in breach and you could have been held in contempt? Yes. I mean, certainly that's a possibility. Beyond that, and I believe this is an important point for this court, two states have now adopted this precise language, the state of Texas and the state of California. So if this court were to find that the language that we choose to use here, this will not language versus cannot. Is this the first time in the history of the world that California and Texas have agreed on something? It may be, Your Honor. I have not researched that, but it would seem that the two states that lead the charge certainly are. I think going from Mexico might work for them, too. But certainly if the court were to find that this language was somehow false and misleading under the FDCPA, it would put Midland and other debt collectors in a Hobson's choice of do we comply with the FDCPA or do we comply with the state legislatures? Now, under the law of some states, if a payment was made, it would waive the statute of limitations defense. You say that's not true here because this is governed by Nevada law. But supposing you were wrong on that, hypothetically, would this then be a misleading letter? It would not. And actually, that makes the very point of why providing a revival disclosure, as the plaintiff has advocated, itself could be false, misleading, or certainly confusing to an unsophisticated consumer. Midland, by policy, does not revive debt. So that's one reason why providing a revival disclosure is inappropriate. We'd be discussing things that could not possibly happen to the account because Midland, and this is in the district court's record, the district court made the findings, Midland has a policy that it does not revive debt even if the state whose law applies would allow it. That's why the will not language is actually more accurate and appropriate here because the law would allow us, if they make a payment in some states, to revive the debt. But we, as a policy, Midland, as a matter of policy, does not revive its debt. It's a choice, and the choice was made for a variety of reasons, but not the least of which was is that having a uniform policy to collect across all states with a national debt collector such as Midland was not only a consumer-friendly choice. Well, nothing would prevent them changing that policy if it's just their private policy. I disagree, Your Honor. I don't think they can change the policy retroactively. Now, perhaps Midland could change its policy moving forward on other debts, but as the Cooper Court found, and that's the District of Georgia, Midland's made a representation at this point, and it said, we will not sue you. If it changed its policy and then turned around and sued, they'd be violating the FDCPA in that regard. So I disagree with the premise that they could change their policy. They've made a commitment to the consumer. They have to stand behind that commitment to the consumer. So the CFPB, I think, considered whether they could regulatorily require language about the potential for revival and decided it would be too confusing. How does that affect our analysis, if at all? Your Honor, what I would suggest is that we made an argument in our brief that the safe harbor provision of the FDCPA should apply to what the CFPB's determination on this issue should be. But regardless of whether you find it binding or persuasive, the CFPB, again, no friend to the debt collection industry and whose sole job it is to protect consumers in this context, has looked at this very issue, has studied this very issue, and made the determination that including such a revival disclosure would do more harm than good, would cause more confusion by introducing a topic that most consumers find to be, quote, counterintuitive. Do you infer that from the consent decree? No. This is from announcements that the CFPB has made on this, to the judge's point. The consent decree doesn't address these issues, but the CFPB has made public announcements that it has studied this issue, and it's continuing to study this issue, but its testing revealed that there was actually more confusion when trying to introduce this topic to an unsophisticated consumer than to leave it out. Thus, their decision to instruct us. We took you over your time. Thank you. Thank you, Judge. Appreciate your time. Do you have a minute for rebuttal? Yes, Your Honor. How you start a letter or how you start a brief matters how you read the rest of the brief or the letter. That's my point here. You all know from reading briefs the first paragraph either hits you well or puts you in a different frame of mind. That's why the way that they decided to lay this out is important. It's a factor. Now, when he talks about the pendulum going too far back, quite frankly, we're not talking about an ordinary debt collection situation where there is a debt owed and there's no prohibition on suing the person because the statute has not run. We have a unique situation where you're dealing with debts that are time barred. And so there are different considerations that are appropriately applied to those. And this idea that we can lay out and say, look, you'll have just three payment options, but we won't tell you that the fourth one, which is your best, your savings, which you entirely walk away from the debt, is the best one. The only other thing I would say is, you know, if this is a test of matter of law, obviously it's not clear cut. Reasonable minds can differ. The Gunther case addressed specifically these same two issues and found that they were either false, the savings was false, or that the statement that we will not sue you as opposed to cannot sue you was misleading. So presumably the purpose of the statutes of limitations that various states have in this area is to bring about a certain finality. If you are liable on a debt, the collector has to sue you within a certain period of time, and that's a policy decision the state has made. And so anything that suggests by implication a different scenario would be really contrary to that policy. Right. And imagine what this would open up. Every personal injury case where they failed to file the claim within the three-year statute or the two-year statute limitations, now they can send a letter from the lawyer saying, look, my client's not going to sue you, but here's what you owe us. Thank you. I'm sorry. Thank you. The case of Stimson v. Midland Credit Management, Inc. is submitted. The next case is Bank of New York Mellon v. Karen Smith, and that's submitted on the briefs. The case of Wendy Jones v. Andrew Saul is submitted on the briefs. And the next case for argument is Philip Brown v. Andrew Saul.
judges: Clifton, Ikuta, Rakoff